UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 98 - 0259  CR·HIGHSMITH

UNITED STATES OF AMERICA  )   CASE NO. _____
                          )   18 U.S.C. §371          MAGISTRATE
V.                        )   18 U.S.C. §982              JOHNSON
                          )   18 U.S.C. §1503
MARILYN BONACHEA          )   18 U.S.C. §1512
                          )   18 U.S.C. §1621
_____ )   18 U.S.C. §1622
                              18 U.S.C. §1623
                              18 U.S.C. §1956
                              31 U.S.C. §5324

SEALED INDICTMENT

The Grand Jury charges that:

<u>COUNT I</u>

Beginning in or about 1989, the exact date being unknown to the Grand Jury, and continuing through and until the date of the return of this Indictment, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

MARILYN BONACHEA,

did knowingly and intentionally combine, conspire, confederate, and agree, and have a tacit understanding with persons to the grand jury known and unknown, to commit offenses against the United States, hereinafter described, that is:

a)      to corruptly influence, obstruct and impede and attempt to corruptly influence, obstruct, and impede the due administration of justice, in violation of Title 18, United States Code, Sections 1503;

1



b)      to corruptly persuade and attempt to persuade another person with the intent to influence the testimony of a witness in a federal grand jury proceeding, in violation of Title 18, United States Code, Sections 1512(b), and 1622;

c)      to make false material declarations while under oath in the trial of <u>United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta,</u> Case No. 91-6060-Cr-Moreno, in violation of Title 18, United States Code, Section 1621;

d)      to make false material declarations while under oath during a federal grand jury proceeding, in violation of Title 18, United States Code, Seciton 1623(a);

e)      to violate a restraining order of the U.S. District Court in the case of <u>United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta,</u> Case No. 91-6060-Cr-Moreno, that the wealth, assets, money and income of defendants Falcon and Magluta could not be used to pay their expenses and fees without the express permission of the Court, in violation of Title 18, United States Code, Section 401(3);

f)      to knowingly conduct, and attempt to conduct financial transactions affecting interstate commerce, knowing that the proceeds involved in the financial transactions represented some form of specified unlawful activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs as defined in Title 21, United States Code, knowing that the transactions were designed in whole and in part to conceal the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and to avoid a transaction reporting requirement under state and federal law, in violation of Title 18, United States Code, Section 1956(a)(1).

2

## GOAL AND PURPOSE OF THE CONSPIRACY

It was the goal and purpose of this conspiracy that the defendant, MARILYN BONACHEA, and her co-conspirators would provide false and misleading testimony in the trial of United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta, Case No. 91-6060-Cr-Moreno, and provide false and misleading information to Federal Grand Jury 94-6(MIA), knowing the information to be false and misleading. The defendant, MARILYN BONACHEA, would further maintain and assist in maintaining a ledger of payments of narcotics proceeds to potential defense witnesses and defense witnesses' family members in order to provide false and misleading testimony in the trial of United States v. August ("Willy") Falcon and Salvador ("Sal") Magluta, Case No. 91-6060-Cr-Moreno. The defendant, MARILYN BONACHEA, would further cause and assist in causing the payment of narcotics proceeds to associates of the Falcon-Magluta criminal organization, including attorneys, inmates, family members, and others, in violation of a restraining order forbidding the payment of such funds, entered by United States District Judge Federico Moreno in United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta, Case No. 91-6060-Cr-Moreno.

## MANNER AND MEANS

From in or about mid-1989, and continuing up to and including the date of the return of this Indictment, the defendant, MARILYN BONACHEA, was a close associate of Salvador ("Sal") Magluta. From in or about the late 1970's continuing up to and including 1992, Salvador ("Sal") Magluta, and his partner, Augusto ("Willy") Falcon, trafficked in

large quantities of cocaine, which generated large amounts of illicit United States currency.

From in or about the late 1980's, and continuing up to and through the date of the return of this Indictment, the defendant, MARILYN BONACHEA, controlled and/or managed a portion of the illicit proceeds of said specified unlawful activity, that is, dealing in narcotic and dangerous drugs, for Salvador ("Sal") Magluta. The defendant, MARILYN BONACHEA, used multiple bank accounts to launder narcotics proceeds by depositing a specific sum of currency into these various accounts in amounts less than $10,000, thus concealing and disguising the nature, location, source, ownership, and control of the proceeds.

The defendant, MARILYN BONACHEA, would further oversee the payment of narcotics proceeds to potential Falcon-Magluta defense witnesses, witnesses' family members, attorneys and others, in <u>United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta</u>, Case No. 91-6060-Cr-Moreno, in an effort to obstruct the due administration of justice.

Further, the defendant, MARILYN BONACHEA, would testify falsely about material matters while under oath in the trial of <u>United States v. Augusto ("Willy") Falcon and Salvadro ("Sal") Magluta</u>, Case No. 91-6060-Cr-Moreno, and before Federal Grand Jury 94-06(MIA). Finally, the defendant, MARILYN BONACHEA, would suborn perjury about material matters by other persons before Federal Grand Jury 94-06(MIA), in an effort to obstruct the due administration of justice.

4

## OVERT ACTS

In furtherance of the goal and purpose of this conspiracy, the defendant, MARILYN BONACHEA, and her co-conspirators, committed certain overt acts, in the Southern District of Florida and elsewhere, including but not limited to the following:

1.    In October 1989, in the Southern District of Florida, defendant MARILYN BONACHEA received from Salvador Magluta two checks for $85,000.00 written on an off-shore bank account.

2.    In December 1989, in the Southern District of Florida, defendant MARILYN BONACHEA utilized two checks from Salvador Magluta to purchase a house at 12091 S.W. 51st Street, Miami, Florida.

3.    Starting in 1992, defendant MARILYN BONACHEA regularly visited Salvador Magluta in federal jails and prisons, in the Southern District of Florida, and elsewhere, and discussed with him the distribution of his drug money.

4.    Starting in 1992, in the Southern District of Florida, defendant MARILYN BONACHEA received large sums of cash from associates of Salvador Magluta every month.

5.    Starting in 1992, in the Southern District of Florida, defendant MARILYN BONACHEA maintained a ledger book to record the distribution of drug money to friends and associates of Salvador Magluta.

6.    In 1992, in the Southern District of Florida, defendant MARILYN BONACHEA made and caused to be made regular deposits of cash in amounts less than $10,000 into her bank accounts at Barnett Bank.

5

7.      Starting in 1992, in the Southern District of Florida, defendant MARILYN BONACHEA caused the delivery of money orders to Salvador Magluta's associates who were inmates in various federal and state prisons.

8.      Starting in 1992, in the Southern District of Florida, defendant MARILYN BONACHEA caused the delivery of large amounts of cash to relatives of Salvador Magluta's associates who were inmates in various federal and state prisons.

9.      Starting in 1992, in the Southern District of Florida, defendant MARILYN BONACHEA caused the delivery of large amounts of cash to lawyers and private investigators who were assisting in the legal defense of Salvador Magluta in Case No. 91-6060-Cr-Moreno.

10.     On or about January 12, 1996, in the Southern District of Florida, defendant MARILYN BONACHEA appeared as a witness in the trial of Salvador ("Sal") Magluta and Augusto ("Willy") Falcon.

11.     On or about February 2, 1996, in the Southern District of Florida,  defendant MARILYN BONACHEA appeared as a witness before a federal grand jury.

12.     In or about mid-February 1996, in the Southern District of Florida,  defendant MARILYN BONACHEA possessed a Rolls Royce Corniche convertible, given to her by Salvador Magluta.

13.     In October 1996, in the Southern District of Florida, defendant MARILYN BONACHEA attempted to deliver to an attorney working for Salvador Magluta a ledger book of all her payments to friends, relatives, and associates of Magluta.

6

14.     In February 1997, in the Southern District of Florida, defendant MARILYN

BONACHEA prepared scripts of what her relatives should say to a federal grand jury.

All in violation of Title 18, United States Code, Section 371.

## COUNT II

On or about January 12, 1996, at Miami, Dade County, in the Southern District of

Florida, and elsewhere, the defendant,

### MARILYN BONACHEA,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice

in the case of <u>United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta</u>, Case

No. 91-6060-Cr-Moreno, then pending in the United States District Court in and for the

Southern District of Florida, by knowingly and intentionally making and causing to be made

materially false statements, while under oath, as alleged in Count V and Count VI of this

Indictment, which are incorporated herein by reference.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT III

On or about February 2, 1996, at Miami, Dade County, in the Southern District of

Florida, and elsewhere, the defendant,

### MARILYN BONACHEA,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice

in an investigation before Federal Grand Jury 94-06(MIA), by knowingly and intentionally

making and causing to be made materially false statements, while under oath, as alleged in

Count VII of this Indictment, which is incorporated herein by reference.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT IV

On or about February 18, 1997, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### MARILYN BONACHEA,

did corruptly endeavor to influence, obstruct, and impede the due administration of justice in an investigation before Federal Grand Jury 94-06(MIA), by delivering and causing to be delivered, a script to Grand Jury witnesses, detailing materially false and misleading testimony to which the witnesses should testify, knowing the script would induce the witnesses to make materially false statements while under oath.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT V

On or about January 12, 1996, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### MARILYN BONACHEA,

having taken an oath that she would testify truthfully as a witness in the trial of United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta, Case No. 91-6060-Cr-Moreno, did knowingly and willfully, contrary to said oath, make false material declarations, knowing the declarations to be false material declarations, as underlined, and as herein set forth:

Q.     Did Sal Magluta assist you with money?

8

A.     Yes.

Q.     In what period?

A.     Probably from '86.

Q.     On?

A.     On.

Q.     For how many years.

A.     Okay.  Until the present date.

Q.     How much money were you receiving from Sal Magluta from '86 yearly?

A.     I got, Sal Magluta gave me money to help me support myself, but he gave me money also for his own defense.  In case anything happened, he wanted me to go and work as a paralegal because he needed somebody that he trusted and could run errands and do things.

So I just took the money, all at once.  So I just took the money out of there and just paid my bills, and to take care of any expenses that I had.

Q.     You had some large sum of money all at one time?

A.     Right.

Q.     What year was that?

A.     1988.

Q.     What was that sum of money?

A.     I didn't count it, but I can approximate for you.

Q.     What is that?

A.     Like $500,000.

The aforementioned testimony by the defendant MARILYN BONACHEA, as she then and there well knew, believed and remembered, was a false material declaration, in that the defendant did not receive a $500,000.00 lump sum payment in 1988, but instead received monthly cash payments ranging from $50,000.00 to $100,000.00, starting in or about 1988 and continuing through 1995.

All in violation of Title 18, United States Code, Section 1621.

COUNT VI

On or about January 12, 1996, at Miami, Dade County, in the Southern District of Florida, the defendant,

MARILYN BONACHEA,

having taken an oath that she would testify truthfully as a witness in the trial of <u>United States v. Augusto ("Willy") Falcon and Salvador ("Sal") Magluta,</u> Case No. 91-6060-Cr-Moreno, did knowingly and willfully, contrary to said oath, make false material declarations, knowing the declarations to be false material declarations, as underlined, and as herein set forth:

Q.     Was it cash?

A.     Yes, it was cash.

Q.     <u>Who did you receive it from</u>?

A.     <u>I don't know the person.</u>

Q.     Was it a male?

A.     It was a male.

10

Q.     Where were you when you received it?

A.     In my house, my mom's house.

Q.     You didn't know the person who brought you this amount of money?

A.     No.

Q.     Had Sal Magluta before hand told you that someone was going to bring you this money?

A.     Yes, he told me to hang onto that money for him, that he had made some money earlier in the 70's, and that, I believe in the drug business, but that he wasn't doing that any more, that he wanted me to hold onto that money in case I needed it, in case he needed it, but that he was legit now.  He was no longer in the business, and that was made from investments that he had.  Boat racing or something.  I don't know.

Q.     That's what he told you in 1988?

A.     That's what he told me.

The aforementioned testimony by the defendant, MARILYN BONACHEA, as she then and there well knew, believed, and remembered, was a false material declaration, in that defendant, MARILYN BONACHEA, was never told by Salvador ("Sal") Magluta in 1988 that he was no longer in the "drug business," or that he was "legit now," or that any money she received from him "was made from investments that he had."

All in violation of Title 18, United States Code, Section 1621.

## COUNT VII

On or about February 2, 1996, at Miami, Dade County, in the Southern District of

11

Florida, the defendant,

## MARILYN BONACHEA,

having taken an oath that she would testify truthfully as a witness before Federal Grand Jury 94-06(MIA), did knowingly and willfully, contrary to said oath, make false material declarations, knowing the declarations to be false material declarations, as underlined, and as herein set forth:

Q.    You have indicated - let's talk about that a little bit.

You have indicated that you were living off the money that Sal Magluta gave you from '86 on; is that right?

A.    Right.

Q.    You have an account at Barnett Bank, right?

A.    Correct.

Q.    Let me show you ma'am, a print out of your bank account since 1987.

Look at that for a moment.  Is that your account number?

A.    Yes, it is.

Q.    Do you recognize the way the deposits occur?

A.    What do you want me to recognize?

Q.    Let's go over this.  In 1987, at least as far as this record goes back, you began depositing cash, correct?

A.    Right.

Q.    And virtually on a regular basis you are depositing $1,500, $1,800, a thousand,

$2,000 always in amounts less than $10,000; is that correct?

A.     Yes.

Q.     And the total at the ends from 1987 to 1994, how much total cash there at the end have you deposited into that one account?

A.     There are a lot of transfer in my savings.  You want me to read the number at the end.

Q.     Yes ma'am.

A.     $592,081.

Q.     Each time you deposit, except for one instance where there was a transfer, each deposit was an amount less than $10,000 is that right?

A.     There is a transfer of a $13,000.

Q.     Other than that one transfer?

A.     No, I only deposit like five or $6,000 a month into my checking because that's all I need to pay my bills.  The rest of my money goes into my savings.

Q.     Where is this money coming from?

A.     This is my money that I had from Sal.

Q.     So as I understand it, someone drops off $500,000 in cash to you more or less?

A.     Right.

Q.     What do you begin to do with the money?

A.     I kept it.

Q.     Where?

13

A.   In my house.

Q.   You have the lump sum and you were making little deposits?

A.   Because I don't know what is going to happen, and I don't know if I would need that money to use it to help Sal so I just keep the money with me.

Q.   <u>Had you ever given the money to any other person</u>?

A.   <u>Any other person</u>?

Q.   <u>Any other person, friend, relative</u>?

A.   I have given my mom money.

Q.   Other than your mother?

A.   My son.

Q.   <u>Other than that, no other money that you disbursed in any fashion to any other person other than your son or your mother</u>?

A.   <u>No</u>.

The aforementioned testimony by defendant MARILYN BONACHEA, as she then and there well knew, believed, and remembered, was a false material declaration, in that the defendant had given, and had caused to be given, the money to many other persons, friends, and relatives, in addition to her mother and son, in varying, individual amounts, but totaling over $7 million dollars between approximately 1992 and 1995.

All in violation of Title 18, United States Code, Section 1621.

<u>COUNT VIII</u>

On or about February 2, 1996, at Miami, Dade County, in the Southern District of

14

Florida, the defendant,

## MARILYN BONACHEA,

having taken an oath that she would testify truthfully as a witness before FGJ 94-06(MIA),

did knowingly and willfully, contrary to said oath, make false material declarations, knowing

the declarations to be false material declarations, as underlined, and as herein set forth:

Q.    Showing you Grand Jury exhibit number 30.  On the front of this picture, do

you recognize those two photos?

A.    This is my house.

Q.    That is the one out in horse country?

A.    Right.

Q.    If you turn it over please, what house it that?

A.    This is the house that I live in now.

Q.    What is the address?

A.    8908 Southwest 5th Lane.

Q.    Now the house that you bought in horse country, did it already have the fence

with the barb wire around it when you bought it?

A.    When I bought it, no.

Q.    When was it put on there?

A.    Sometime after I bought it, we had to fix it all up.

Q.    <u>For what purpose was what looks to be about 8 or 10 foot fence with barb wire</u>

<u>put there</u>?

A.      Because I lived alone.  After I got divorced I never got remarried and I lived alone with my son and I have to be safe.

The aforementioned testimony by defendant MARILYN BONACHEA, as she then and there well knew, believed, and remembered, was a false material declaration, in that the defendant had gotten remarried after her divorce.

All in violation of Title 18, United States Code, Section 1621.

## COUNT IX

On or about February 18, 1997, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## MARILYN BONACHEA,

did knowingly procure other persons, that is, Dario Bonachea, Gabriel Mendoza and Zenaida Mendoza to commit perjury about material matters before Federal Grand Jury 94-06(MIA); in violation of Title 18, United States Code, Sections 1622 and 2.

## COUNT X

From in or about 1987, the exact date being unknown to the Grand Jury, and continuing through the date of the return of this Indictment, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## MARILYN BONACHEA,

did knowingly and intentionally combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, to knowingly conduct, and attempt to conduct financial transactions affecting interstate commerce, knowing that the proceeds involved in

16

the financial transactions represented some form of specified unlawfull activity, that is, the receiving, concealment, buying, selling and otherwise dealing in narcotic and dangerous drugs, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a) and 963, knowing that the transactions were designed in whole and in part to conceal the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and to avoid a transaction reporting requirement under state and federal law; in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

OVERT ACTS

In furtherance of this conspiracy and to effect the objects thereof, there were committed by the defendant, MARILYN BONACHEA, and her co-conspirators, in the Southern District of Florida, and elsewhere, at least one of the following overt acts:

A.     From on or about September 22, 1987, to on or about January 7, 1997, the defendant, MARILYN BONACHEA, deposited and caused to be deposited, approximately $701,000.00, in cash, all in increments of less than $10,000.00, into Barnett Bank, Account #1197061161, in Miami, Florida.

B.     From on or about March 1, 1990, to on or about July 25, 1996, the defendant, MARILYN BONACHEA, deposited approximately $80,400, in cash, all in increments of less than $10,000.00, into Barnett Bank, Account #6385308339, in Miami, Florida.

C.     From on or about April 25, 1990, to on or about September 7, 1996, the defendant, MARILYN BONACHEA, deposited approximately $33,100.00, in cash, all in increments of less than $10,000.00, into Barnett Bank, Account No.6385219514, in Miami,

17

Florida.

D.       From on or about August 23, 1994, to on or about May 7, 1996, the defendant, MARILYN BONACHEA, deposited approximately $65,400.00, in cash, all in increments of less than $10,000.00, into Barnett Bank, Account #4282279522, in Miami, Florida.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS XI-XIV

On or about the dates set forth below, at Miami, Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### MARILYN BONACHEA,

did knowingly conduct, and attempt to conduct, a financial transaction affecting interstate commerce, that is, the deposit of funds, which involved the proceeds of a specified unlawful activity, that is, the receiving, concealment, buying, selling, and otherwise dealing in narcotic and dangerous drugs, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a) and 963, knowing that the transaction was designed, in whole or in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction, the defendant, MARILYN BONACHEA, knew that the property involved in the financial transaction, that is, funds in the amounts set forth below, represented the proceeds of some form of unlawful activity.

18

## COUNT XI

On or about May 10, 1993, the defendant, MARILYN BONACHEA, deposited approximately $7,000.00 in cash, into Barnett Bank, Miami, Florida, account #1197061161.

## COUNT XII

On or about March 1, 1994, the defendant, MARILYN BONACHEA, deposited approximately $4,000.00, in cash, into Barnett Bank, Miami, Florida, account #6385219514.

## COUNT XIII

On or about January 13, 1995, the defendant, MARILYN BONACHEA, deposited approximately $7,500.00, in cash, into Barnett Bank, Miami, Florida, account #4282279522.

## COUNT XIV

On or about June 21, 1995, the defendant, MARILYN BONACHEA, deposited approximately $3,000.00 in cash, into Barnett Bank, Miami, Florida, account #6385308339.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT XV

On or about the dates set below, at Miami, Dade County, in the Southern District of

Florida, the defendant,

### MARILYN BONACHEA,

knowingly, and for the purpose of evading the reporting requirements of Title 31, United

States Code, Section 5313(a), and the regulations promulgated thereunder, did structure,

assist in structuring, and cause to be structured, certain transactions, that is, the depositing

of cash in amounts less than $10,000.00, in U.S. currency, into an account of a domestic

financial institution, as more particularly described below:

| DATE OF DEPOSIT | FINANCIAL INSTITUTION | DEPOSIT AMOUNT |
|---|---|---|
| September 2, 1993 | Barnet Bank Acct. # 1197061161 | $7,000.00 |
| September 10, 1993 | Barnett Bank Acct. # 1197061161 | $3,000.00 |
| September 13, 1993 | Barnett Bank Acct. #1197061161 | $8,000.00 |
| September 17, 1993 | Barnett Bank Acct. #1197061161 | $8,000.00 |
| September 29, 1993 | Barnett Bank Acct. #1197061161 | $8,000.00 |

All in violation of Title 31, United States Code, Sections 5324(a)((3) and 5324(c), and

Title 18, United States Code, Section 2.

## COUNT XVI

On or about the dates set forth below, at Miami, Dade County, in the Southern District of Florida, the defendant,

### MARILYN BONACHEA,

knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, did structure, assist in structuring, and cause to be structured, certain transactions, that is, the depositing of cash in amounts less than $10,000.00, in U.S. currency, into an account of a domestic financial institution, as more particularly described below:

| DATE OF DEPOSIT | FINANCIAL INSTITUTION | DEPOSIT AMOUNT |
|---|---|---|
| August 1, 1994 | Barnett Bank Acct. #1197061161 | $7,000.00 |
| August 9, 1994 | Barnett Bank Acct. #1197061161 | $7,000.00 |
| August 23, 1994 | Barnett Bank Acct. #1197061161 | $7,000.00 |
| August 26, 1994 | Barnett Bank Acct. #1197061161 | $5,000.00 |

All in violation of Title 31, United States Code, Sections 5324(a)(3), 5324(c) and Title 18, United States Code, Section 2.

21

## COUNT XVII

On or about the dates set below, at Miami, Dade County, in the Southern District of Florida, the defendant,

### MARILYN BONACHEA,

knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, did structure, assist in structuring, and cause to be structured, certain transactions, that is, the depositing of cash in amounts less than $10,000.00, in U.S. currency, into an account of a domestic financial institution, as more particularly described below:

| DATE OF DEPOSIT | FINANCIAL INSTITUTION | DEPOSIT AMOUNT |
|---|---|---|
| July 10, 1995 | Barnett Bank Acct. #1197061161 | $7,000.00 |
| July 25, 1995 | Barnett Bank Acct. #1197061161 | $6,386.56 |
| July 26, 1995 | Barnett Bank Acct. #1197061161 | $1,000.00 |

All in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(c), and Title 18, United States Code, Section 2.

22

## COUNT XVIII

On or about the dates set below, at Miami, Dade County, in the Southern District of Florida, the defendant,

### MARILYN BONACHEA,

knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, did structure, assist in structuring, and cause to be structured, certain transactions, that is the depositing of cash in amounts less than $10,000.00, in U.S. currency, into accounts of a domestic financial institution, as more particularly described below:

| DATE OF DEPOSIT | FINANCIAL INSTITUTION | DEPOSIT AMOUNT |
|---|---|---|
| September 5, 1995 | Barnett Bank Acct. #1197061161 | $7,650.25 |
| September 6, 1995 | Barnett Bank Acct. #4282279522 | $5,500.00 |
| September 25, 1995 | Barnett Bank Acct. #1197061161 | $7,500.00 |

All in violation of Title 31, United States Code, Sections 5324(a)(3), 5324(c) and Title 18, United States Code, Section 2.

## COUNT XIX

The allegations contained in Counts X through XVIII of this Indictment are re-alleged and incorporated by reference as though fully set forth herein, for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

As a result of the foregoing offenses, the defendant,

### MARILYN BONACHEA,

shall forfeit to the United States any property, real or personal, involved in such offenses, or any property traceable to such property which the defendant, MARILYN BONACHEA, obtained directly and indirectly as a result of the aforestated offenses, in violation of Title 18, United States Code, Sections 1956(a)(1) and (2) and 1956(h).

Such forfeitures shall include the following:

a.    $1,000,000 in United States Currency, and all interest and proceeds traceable thereto, in that such sum in aggregate is property which was involved in, and derived directly and indirectly from, the aforestated offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred, or sold to, or deposited with a third party;

(3)    has been placed beyond the jurisdiction of the Court; or

(4)    has been commingled with other property which cannot be subdivided with difficulty;

24

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

    b. The townhouse owned by defendant MARILYN BONACHEA, located at 8908 S.W. 5th Lane, Miami, Florida.

   All in violation of Title 18, United States Code, Sections 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
THOMAS E. SCOTT
UNITED STATES ATTORNEY

_____
MICHAEL P. SULLIVAN
ASSISTANT UNITED STATES ATTORNEY
SENIOR LITIGATION COUNSEL

_____
GUY A. LEWIS
FIRST ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

CASE NO. 98-0259 CR-HIGHSMITH

v.

**CERTIFICATE OF TRIAL ATTORNEY***

MAGISTRATE JUDGE
JOHNSON

MARILYN BONACHEA

**Related Case Information:**

| | | | |
|---|---|---|---|
| SUPERSEDING | Yes ____ | No ____ |
| New Defendant(s) | Yes ____ | No ____ |
| Number of New Defendants | ____ |
| Total number of counts | ____ |

**Court Division:** (Select One)

X___ Miami ____ Key West
____ FTL ____ WPB ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No) No _____
List language and/or dialect _____

4. This case will take ___15___ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                 (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | X | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | X |
| V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) _No_
If yes:

Judge: _____     Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) _____
If yes:

Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____     District of _____

7. This case originated in the U.S. Attorney's office prior to August 16, 1985
(Yes or No) NO _____

MICHAEL P. SULLIVAN
ASSISTANT UNITED STATES ATTORNEY
FLA. BAR #134814

*Penalty Sheet(s) attached

REV.12/12/96N:\UDD\LROVIROS\CERTRIAL.FRM

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:  MARILYN BONACHEA

Count #: I                                     98 - 0259   CR-HIGHSMITH

                                                          MAGISTRATE JUDGE
                                                          JOHNSON

*Max. Penalty:  5 years $250,000 fine

Count #: II

*Max. Penalty:  10 years, $250,000 fine

Count #: III

*Max. Penalty: 10 years, $250,000 fine

Count #: IV

*Max. Penalty:  10 years, $250,000 fine

Count #: V

*Max. Penalty:  5 years, $250,000 fine

Count #: VI

*Max. Penalty:  5 years, $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  MARILYN BONACHEA                     Case No.

Count #:  VII                          08 - 0259        CR-UNGSMITH

                                                         MAGISTRATE JUDGE
                                                         JOHNSON

*Max. Penalty:  5 years, $250,000 fine

Count #:  VIII

*Max. Penalty:  5 years, $250,000 fine

Count #:  IX

*Max. Penalty:  5 years, $250,000 fine

Count #: X

*Max. Penalty:  20 years, $500,000 fine

Count #:  XI

*Max. Penalty:  20 years, $500,000 fine

Count #:  XII

*Max. Penalty:  20 years, $500,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: __MARILYN BONACHEA__

Count #: XIII                        Case No.

98-0259 CR-HIGHSMITH

MAGISTRATE JUDGE
JOHNSON

*Max. Penalty: 20 years, $500,000 fine

Count #: XIV

*Max. Penalty: 20 years, $500,000 fine

Count #: XV

*Max. Penalty: 10 years, $500,000 fine

Count #: XVI

*Max. Penalty: 10 years, $500,000 fine

Count #: XVII

*Max. Penalty: 10 years, $500,000 fine

Count #: XVIII

*Max. Penalty: 10 years, $500,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96